UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| U.S. SECURITIES AND<br>EXCHANGE COMMISSION,<br>100 F Street, N.E.<br>Washington, DC 20549<br><br>          PLAINTIFF,<br><br>    v.<br><br>RICHARD GLEN SPRADLING<br>3007 Fairway Drive<br>Sugar Land, TX 77478,<br><br>          DEFENDANT. | Civil Action No. |

## COMPLAINT

Plaintiff, U.S. Securities and Exchange Commission (the "Commission") alleges for its Complaint against Defendant Richard Glen Spradling ("Spradling") as follows:

## SUMMARY

1.  Richard Glen Spradling, a penny stock promoter, engaged in illegal touting, via newsletters and websites, when he failed to fully and accurately disclose the amount and nature of his compensation for his stock promotions, which most often came from the very companies he promoted or persons associated with the companies he promoted. Spradling also recommended that readers of his newsletters and websites purchase stocks while, at the same time and without disclosing his intention, he sold his own positions in these stocks during the distribution of his newsletters. In addition, Spradling made repeated false representations that his stock picks appearing in his numerous newsletters and on his websites were "independent" or

the result of "independent research" when they were actually the result of compensation he received from, or had been promised by, the companies he promoted or persons associated with the companies he promoted, rather than from any independent analysis. Spradling also knowingly or recklessly disseminated fraudulent earnings information and erroneous earnings forecasts on behalf of at least one issuer.

2. By knowingly or recklessly engaging in fraudulent conduct, Defendant violated the antifraud provisions of the federal securities laws, specifically Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)], and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

3. Defendant also violated Section 17(b) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(b)] when he touted stocks in his newsletters and on his websites without fully disclosing that he had received or expected to receive compensation for doing so, and the nature and amount of such compensation.

4. The Commission requests, among other things, that the Court permanently enjoin Spradling from committing further violations of the federal securities laws. Unless enjoined, Defendant is likely to engage in similar violations.

5. The Commission also requests that the Court order Defendant to pay civil penalties, pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77v(a)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)], and to disgorge his illegal gains plus prejudgment interest.

6. Pursuant to Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)], as amended by Section 603 of the Sarbanes Oxley Act [Public Law 107-204, 116 Stat. 745 (July 30, 2002)],

and under the Court's equitable powers, the Commission further requests that this Court permanently bar Spradling from participating in any offering of penny stock.

## JURISDICTION

7.   This Court has jurisdiction over this action pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Exchange Act Sections 21(d), 21(e), and 27 [15 U.S.C. §§ 78u (d), 78u(e), and 78aa].

8.   The Commission brings this action pursuant to Section 20(b) of the Securities Act [15 U.S.C. § 77t(b)] and Sections 21(d) and 21(e) of the Exchange Act [15 U.S.C. §§ 78u(d) and (e)], to restrain and enjoin permanently Spradling from engaging in the acts, practices, and courses of business alleged herein.

9.   Defendant Spradling, directly or indirectly, has made use of the means and instrumentalities of interstate commerce, or the mails in furtherance of the acts, practices, and courses of business alleged herein.

10.   Certain of the acts, practices, and courses of business alleged herein occurred within this judicial district. Therefore, venue is proper pursuant to Securities Act Sections 20(g) and 22(a) [15 U.S.C. §§ 77t(g) and 77v(a)], and Exchange Act Sections 21(e) and 27 [15 U.S.C. §§ 78u(e) and 78aa].

## DEFENDANT

11.   Richard Glen Spradling, 46, is a resident of Sugar Land, Texas and a penny stock promoter. At all relevant times, Spradling was the sole owner of RS Market Alerts, Inc., Market News Alert, Fairview Consulting, and Omni Traders.

**FACTUAL ALLEGATIONS**

**Background**

12. Spradling, through his several businesses bearing the names Market News Alert, Fairview Consulting, and Omni Traders, created multiple newsletters that promoted penny stocks. From at least April 2001 and through September 2003, Spradling produced newsletters under various titles, including "Market News Alert," "Breaking Market News," "National Investors News Update," "National Investors Alert," "OTC Stock Watch," and "The Stock Alert." Spradling also used certain websites that he owned or controlled, such as "marketnewsalert.com," "marketnewsalertonline.com," "wallstreetnewsalert.com," and "investmentreport.com," to promote penny stocks through February 2004. For the most part, Spradling was the sole author and editor of all the content in all the editions of the newsletters and on his websites.

13. Each newsletter followed the same general format: the newsletter boasted about the success of previous recommendations, featured a recommendation of a new company, encouraged readers to take advantage of the investment opportunity, and followed with a disclaimer. The disclaimer often stated that Spradling or one of his entities may buy or sell shares of the recommended stock at any time and, in some cases, stated that Spradling's research and analysis was independent.

**Spradling Touted Stocks Without Fully Disclosing His Compensation**

14. From as early as April 2001 through September 2003, Spradling promoted more than 44 penny stock issues by faxing newsletters to hundreds of thousands of individuals. He also promoted certain stocks through his websites. Spradling either received compensation or

4

had agreements to receive compensation from all of the companies, or persons associated with the companies, whose stock Spradling promoted through his newsletters and on his websites.

15. In his newsletters and on his websites, Spradling failed to disclose or inadequately disclosed his compensation for many of these promotions.

16. For example, during May 2002, Spradling created and disseminated a newsletter titled "Market News Alert" that promoted ICOA, Inc. ("ICOA"). In the newsletter, Spradling stated that his company, Fairview Consulting, "was paid 1 million free trading shares of ICOA for the production and distribution of this report by a *third party investor*." (Emphasis added). This statement was false because, in fact, Spradling received this stock from the Chairman and CEO of ICOA. At no time did Spradling disclose the source of the ICOA shares.

17. Also in May 2002, Spradling created and disseminated another issue of his newsletter "Market News Alert," which this time promoted THC Communications, Inc. (THCR). In his disclosure, Spradling stated that his business, Fairview Consulting, "was paid seventy thousand dollars for the production and distribution of this report by THC Communications, Inc." In fact, Spradling received approximately $400,000 from THCR and certain officers of THCR. Spradling failed to fully disclose his compensation for this promotion.

18. In November 2002, Spradling's website, investmentreport.com, began featuring a promotion of the Finx Group (FXGP). On August 24, 2003, the FXGP promotion remained on the website. However the disclaimer language on the website, where Spradling purported to disclose his compensation, still stated that Spradling's company, "Fairview Consulting, Inc., was paid seventy thousand dollars for the production and distribution of this report by *THC Communications, Inc.*" (Emphasis added). In fact, the promotion of THCR had occurred ten months earlier, as previously alleged in paragraph 17. Despite this stale and false disclosure

5

regarding THCR, Spradling failed to disclose any information concerning the amount and nature of his compensation for the web-based promotion of FXGP. In fact, a third-party payer/promoter paid Spradling 50,000 shares of FXGP common stock for the web-based promotion.

19.  On or about March 2003, Spradling created and disseminated a newsletter titled "National Investors News Update" that promoted Affordable Telecommunications, Inc. (ATCT.PK). In this newsletter, Spradling stated that his company, National Investors News Update, "has been compensated twenty five hundred dollars. Compensation was made by a third party investor of ATCT." Spradling failed to disclose that, in fact, the company paid him 250,000 of its free trading shares for printing and distributing this newsletter.

## Spradling Scalped Stocks He Promoted

20.  Spradling also engaged in a practice known as scalping, namely recommending the purchase of a stock without disclosing the intent to sell the same stock that is currently being promoted. As early as April 2001 and continuing through September 2003, Spradling engaged in a pattern of selling stocks that he promoted into the demand that his newsletter and website promotions created.

21.  For the most part, the prices of the stocks that Spradling promoted increased dramatically during and after his promotion. Certain stocks promoted by Spradling saw price increases ranging from 105% to over 2,065% within approximately forty-five days of the start of his promotions.

22.  Spradling's newsletters contained only general statements concerning his intentions to sell the shares he received as compensation. The newsletters stated, generally, that the "shares [Spradling received] may be sold into the open market at any time" or that Spradling "may buy or sell [subject company] common shares without notice."

23. Spradling's use of a general disclaimer was materially misleading because, despite his recommendation to buy the stock, Spradling intended to and did sell the shares he received into the increased buy volume that his newsletters and websites created. At no time did Spradling disclose his intention to sell the stock he received.

24. For example, in October 2001, Spradling created and disseminated a newsletter entitled Market News Alert that promoted Emergent Financial Group, Inc. ("EGFG"). The newsletter, dated November 1, 2001, stated that "Market News Alert and its officers and directors may from time to time buy or sell EGFG common shares in the open market without notice."

25. Spradling began faxing the EGFG newsletter on October 18, 2001. Spradling sent additional faxes periodically until November 28, 2001; faxes were sent on approximately 19 of the 40 days between October 18, 2001 and November 28, 2001. Spradling first received shares of Emergent stock on October 24, 2001, six days after the first faxes were sent, and he began selling the shares that very day at $4.95 per share. He continued to receive shares through November 28th. By that date, he received a total of 391,000 shares through eight transfers into his accounts. In all, he sold a total of 279,000 shares at prices ranging from $.73 to $4.95 through December 5th. The remaining 112,000 shares were transferred out of Spradling's accounts from November 6th through 8th. In total, Spradling received nearly $294,000 from the sale of his shares as compensation for the newsletter promotion.

26. Spradling received compensation in the form of stock for at least 36 of the penny stocks he promoted from approximately April 2001 through September 2003. Spradling consistently sold the shares of each company's stock that he received as compensation. Of the 36 stocks Spradling received as compensation, he sold shares of at least 32 of the stocks during

his promotion of the stock.  In total, Spradling received approximately 20,882,117 shares of stock in the companies that he promoted from approximately April 2001 through September 2003.  In all, Spradling sold nearly 15 million of these shares and transferred nearly 7 million shares to accounts held by other individuals or entities.  Spradling's sales of the stocks he promoted resulted in over $1.6 million in net proceeds.

**Spradling Materially Misstated the Annual Revenues of a Company He Promoted**

27.     On at least one occasion, Spradling fraudulently misrepresented a company's financial performance either knowingly (despite knowledge of correct information through SEC filings and written company business plan) or recklessly (without verifying information provided by the issuer despite access to SEC filings).  In exchange for the promotion, Spradling received compensation of approximately $400,000 from the company and individuals whom Spradling knew were the CEO and CFO of the company.

28.     In May 2002, Spradling wrote and disseminated a promotion of THC Communications in his newsletter titled Market News Alert.  Prior to disseminating the newsletter, Spradling met with the officers of THCR, obtained a copy of THCR's business plan, and accessed THCR's 2001 financial statements filed with the Commission.  THCR's 2001 financial statements reflected $739,065 of audited revenues and its business plan projected 2002 revenues of $12 million.

29.     Spradling's May 2002 newsletter listed THCR's audited 2001 revenues as $11.1 million, which was fifteen times greater than THCR's actual 2001 audited revenues that it reported in its filings with the Commission.  Spradling thus either knowingly or recklessly made a material misstatement of THCR's audited 2001 revenues.

8

30. The newsletter also listed THCR's projected 2002 revenue as $25 million, which was twice the amount projected in the company's business plan given to Spradling. Thus Spradling either knowingly or recklessly materially misstated THCR's projected 2002 revenues.

### Spradling Misrepresented His Newsletter as Independent

31. In numerous newsletters under various names, Spradling stated that "Market News Alert is an independent research firm with paid subscribers." Newsletters containing this or similar language were created and disseminated on or about April, June, September, October, November, and December, 2001, and December 2002. This statement was false and misleading because the production and dissemination of each newsletter was paid for by the subject company or a related promoter and Spradling's newsletter services had no paid subscribers.

### FIRST CLAIM

### (Undisclosed Compensation for Stock Touting)

### For Violation of Section 17(b) of the Securities Act

32. The Commission hereby realleges and incorporates paragraphs 1 through 31 by reference.

33. Defendant Spradling violated Section 17(b) of the Securities Act [15 U.S.C. § 77q(b)] when he recommended the purchase of securities described herein, without fully disclosing his receipt of compensation or expected compensation, in amount and nature, as well as whether it came, directly or indirectly, from the companies whose stock he recommended.

## SECOND CLAIM

**(Fraudulent Scheme in Connection With the Purchase or Sale of Securities)**

**For Violation of Section 10(b) of the Exchange Act
and Rule 10b-5, Thereunder**

34.     The Commission hereby realleges and incorporates paragraphs 1 through 31 by reference.

35.     By fraudulently misrepresenting the annual revenues and forecasted revenues of an issuer he promoted, engaging in scalping, and falsely claiming that his newsletters were independent, Spradling, directly or indirectly, singly or in concert with others, in connection with the purchase or sale of securities, by use of the means and instrumentalities of interstate commerce or of the mails, or by use of any facility of any national securities exchange, (a) employed devices, schemes or artifices to defraud; (b) made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or (c) engaged in acts, transactions, practices or courses of business which operated and would operate as a fraud or deceit upon a person or persons, in violation of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## PRAYER FOR RELIEF

**WHEREFORE**, the Commission respectfully requests that this Court enter a judgment:

(a)     Permanently enjoining Defendant Spradling from violating Section 10(b) of the Exchange Act [15 U.S.C. §78j(b)], and Rule 10b-5 thereunder [17 C.F.R. §240.10b-5];

(b)     Permanently enjoining Defendant Spradling from violating Section 17(b) of the Securities Act [15 U.S.C. §77q(b)];

(c) Ordering Defendant Spradling to disgorge the ill-gotten gains that he received as a result of his wrongful conduct, and to pay prejudgment interest thereon, and to pay civil money penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)];

(d) Ordering Defendant Spradling barred from participating in any offering of penny stock, as defined by Section 20(g) of the Securities Act [15 U.S.C. §§77t(g)] and Sections 3(a)(51)(A), [15 U.S.C. § 78c(a)(51)(A)] and 21(d)(6) [15 U.S.C. § 78u(d)(6)] of the Exchange Act, pursuant to Section 21(d) of the Exchange Act [15 U.S.C. §78u(d)], as amended by Section 603 of the Sarbanes Oxley Act [Public Law 107-204, 116 Stat. 745 (July 30, 2002)], and pursuant to the Court's equitable powers; and

(e) Granting such other and additional relief as this Court may deem just and proper.

    Respectfully submitted,

    U.S. Securities and Exchange Commission,

    By: _____/S/_____
    James M. McHale, DC Bar No. 111773,
    Margaret S. McGuire
    100 F Street, N.E.,
    Washington, DC 20549-4631
    Telephone: (202) 551-4476 (McHale)
    Fax: (202) 551-7233 (McHale)
    mchalejm@sec.gov

Dated: June 9, 2005

Of Counsel:
Paul R. Berger
Richard W. Grime
Gregory G. Faragasso